IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| MAX RACK, INC., | : | |
| Plaintiff, | : | Case No. 2:05-cv-784 |
| v. | : | Judge Smith |
| HOIST FITNESS SYSTEMS, INC., | : | Magistrate Judge Abel |
| Defendant. | : | |

## REPORT AND RECOMMENDATION

This matter is before the Magistrate Judge on Defendant Hoist Fitness Systems, Inc.'s September 26, 2005 motion to change venue to the Southern District of California pursuant to 28 U.S.C. § 1404(a) (doc. 6). On August 19, 2005, Max Rack, Inc. filed this patent infringement action against Hoist Fitness Systems, Inc. ("Hoist") in the Southern District of Ohio asking this Court to issue an injunction to stop Hoist from infringing two of its patents. Five days later, in the Southern District of California, Hoist filed suit against Max Rack seeking a declaration of non-infringement for the same patents at issue in this litigation.[1]

**I. Background.**

The subject matter of these two related proceedings are two exercise equipment

---

[1] Hoist makes a number of other claims in the California action including the following: (1) federal unfair competition; (2) state law unfair competition under California Business & Professions Code § 17200, *et seq.*; (3) federal antitrust violations under 15 U.S.C. § 2; (4) state antitrust violations under California Business & Professions Code § 16720, *et seq.*; and (5) patent misuse.

patents held by Max Rack: United States Patents No. 5,215,510 ("'510") entitled Dual-Guided Exercise Apparatus and United States Patent No. 5,669,859 ("'859") entitled Weightlifting Apparatus.

Defendant Hoist designs and manufactures exercise equipment. Compl. ¶ 10. Hoist designed a piece of equipment which it calls Free Lift Out Machine. It simulates the feel of a free weight bench press, allowing the user to rack the weight at the conclusion of the lift at the height he or she selects. Dec. of Jeffrey Patrick, ¶ 4. The Machine is currently in pre-sales phases and has not been sold to the general public or retailers. *Id.* at ¶¶ 4 and 11. However, four prototypes were sold to four different residents of California.[2] *Id.* at ¶ 12. Hoist maintains that the purchasers are non-employee testers, who are supposed to provide feedback on the design of the equipment and may be potential witnesses in this action. Max Rack's complaint alleges that the Free Lift Out Machine "is infringing and contributing to the infringement and/or inducing the infringement of one or more claims of the MAX RACK patents by making, selling, using and/or offering to sell said exercise equipment." Compl. ¶ 12.

## II. The Parties' Arguments.

Hoist argues that this action should be transferred to the Southern District of California because California is the "hub of activity" of this patent infringement case. Specifically, it argues that transfer is appropriate for the following reasons: (1) it is a district where this action could have been brought; (2) none of the conduct complained

---

[2] Hoist identifies the prototype purchasers as Bree Walker, Del Mar, California, Jim Preston, Leucadia, California, Earl Eastman, Rancho Santa Fe, California, and Xavier Nady, San Diego, California.

of occurred in the Southern District of Ohio; rather, any relevant activity occurred in California or Colorado; (3) all of Hoist's witnesses and documentary evidence are located in San Diego as well as the allegedly infringing prototype; (4) while Hoist has sold products in Ohio, the allegedly infringing product has never been sold in Ohio; (5) the Southern District of California is a far more convenient forum for witnesses because four of Hoist's witnesses reside in China, and it would be more convenient for them to travel to California than Ohio; further, the purchasers of Hoist's prototype reside in California and are not subject to subpoena by this Court; (6) Max Rack has ties to California; and therefore, travel to California is not burdensome. Hoist states that Max Rack has attended at least one trade show in California and sells a significant amount of products in the Southern District of California; and (7) lastly, Hoist argues that the interests of justice favor transfer because it has pleaded counterclaims under California state law: unfair competition under the California Unfair Practices Act, California Business & Professions Code § 17200, *et seq*. and antitrust violations under the Cartwright Act, California Business & Professions Code § 16720, *et seq*.

Max Rack maintains that Hoist is attempting to forum shop. Max Rack is organized under the laws of Ohio, and it has its principal place of business in Columbus, Ohio. For example, located in Columbus are its corporate offices, research and development operations, sales and marketing operations, and its manufacturing facility. Hoist has engaged in licensing agreement negotiations, as well as other dealings, with Max Rack in Ohio, and Hoist has sent drawings of its new Free Lift Rack Out Machine to Max Rack in Ohio.

Max Rack further argues that its choice of forum should not be overruled unless

there is a strong showing of inconvenience, which Hoist cannot meet. Max Rack maintains that the place where a party designs or manufactures a product, standing alone, does not warrant transfer. Further, any documentary evidence located in other forums may be easily copied and shipped to the Southern District of Ohio. The fact that Max Rack's documents are located in Ohio counterbalances Hoist's claims of inconvenience because its documents are located in California. Max Rack's relevant documents, which are located in Ohio, include documents relating to the design, development, and manufacturing of the fitness equipment covered by the two patents in dispute, documents relating to the preparation, filing, and prosecution of the patents in dispute, and documents relating to the prior dealings between the parties. The fact that Hoist's prototypes are located in California should be given little weight because it is possible to demonstrate the operation of Hoist's Free Lift Rack Out Machine without bringing the actual machine to Ohio. Moreover, if a court were to decide that the actual viewing of the equipment were necessary, it is likely that Max Rack would also have to produce its equipment, which again counterbalances any burden placed on Hoist.

    Max Rack further maintains that Hoist is exaggerating the number of witnesses that it will need to call.[3] Many of the areas of testimony overlap; therefore, it would only require the testimony of a single witness. In the unlikely event that multiple witnesses will be needed to cover multiple areas, the testimony can be taken by deposition. It is unlikely that Hoist will need to call witnesses from China because it is Max Rack's

---

[3] In Jeffrey Patrick's declaration, he identified 17 employee witnesses that it may need to call at trial. Each of these witnesses reside in California. Dec. of Jeffrey Patrick, ¶ 18.

patents and Hoist's designs which are in dispute not Hoist's manufacturing process. Moreover, there is no reason to believe that flying to California instead of Ohio is any less inconvenient.

In response to Hoist's assertions that the costs of transporting witnesses will be great, Max Rack again points out that deposition testimony is an option as well as using video conferenced testimony. In response to Hoist's claims that this Court does not have the authority to compel some of the witnesses to testify, Max Rack argues that Hoist has not identified a single witness who is unwilling to testify. Moreover, both parties are employers who can compel their employees to testify. Furthermore, Hoist's assertion of witness inconvenience is counterbalanced by Max Rack's witnesses being inconvenienced: many of Max Rack's witnesses are located in the Southern District of Ohio. For example, the named inventors of Max Rack's patents, Mariah T. Liggett, Steven Skilken, and Peirce L. Miller, are located in or around Columbus, Ohio.

Finally, in response to Hoist's argument that the California court would be better able to decide the California state law claims for unfair competition and antitrust violations, Max Rack states that these laws are similar to their federal law counterparts and that this Court is fully capable of applying the controlling state law.

In its reply motion, Hoist argues that because the allegedly infringing product is in the research and development stage and pre-sale stage, none of the allegedly infringing acts occurred in Ohio, which substantially weakens Plaintiff's claim that its choice of forum should control. Max Rack has also undertaken national advertising.

## III. Discussion.

Even if a suit is brought in a proper venue, it may be transferred to another

venue:

> For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

28 U.S.C. § 1404(a). The decision whether to transfer a civil action is in the sound discretion of the trial court. *Midwest Motor Supply Co. v. Kimball,* 761 F. Supp. 1316, 1318 (S.D. Ohio 1991). It is the burden of the moving party to prove "why a change of venue should be granted." *Id.* "This burden is a heavy one and requires the moving party to show that the balance of factors weighs strongly in favor of transfer." *Steelcase Inc. v. Smart Technologies Inc.*, 336 F. Supp. 2d 714, 719 (W.D. Mich. 2004).

Before transferring a case, the court must decide whether the proposed transferee court is one where the action might have been brought. *SKY Tech. Partners, LLC v. Midwest Research Inst.*, 125 F. Supp 2d 286, 291 (S.D. Ohio 2000). "An action 'might have been brought' in a transferee court if: (1) the court has jurisdiction over the subject matter of the action; (2) venue is proper there; and (3) the defendant is amendable to process issuing out of the transferee court." *Id.* (punctuation omitted).

Once the trial court has determined that there is more than one proper forum, the court may undertake a balancing of factors to determine if transfer is appropriate under § 1404. The trial court should consider both the public and private interests involved. *Gulf Oil v. Gilbert*, 330 U.S. 501, 508-09 (1947). The private interest factors include:

> the relative ease of access to the sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing witnesses; possibility of view of the premises; if view would be appropriate to the action; and all other practical problems that make trial of the case easy, expeditious, and inexpensive.

*Id.* at 508. The public interest factors include: "docket congestion; the burden of trial to

a jurisdiction with no relation to the cause of action; the value of holding trial in a community where the public affected live; and the familiarity of the court with controlling law." *Id.* This Court has also identified additional factors: "the nature of the suit, the place of the events involved, and the residences of the parties." *SKY Tech. Partners,* 125 F. Supp 2d at 291.

The plaintiff's choice of forum is given "substantial consideration in balancing the § 1404 factors." *Steelcase*, 336 F. Supp. 2d at 720. "This is especially true [when] the plaintiff also resides in the chosen forum." *Id.* However, when the chosen forum has no connection with the controversy, the plaintiff's choice is given "significantly less weight." *Id.*

While transfer under § 1404 is similar to the analysis undertaken by a court when deciding *forum non conveniens* transfers, § 1404 is different in that it requires a "lesser showing of inconvenience." *SKY Tech. Partners,* 125 F. Supp 2d at 291 (citation omitted). The parties agree that this action could have been filed in the Southern District of California and that the California court has subject-matter jurisdiction over this matter.[4]

---

[4] See 28 U.S.C. § 1400(b) which states

> (b) Any civil action for patent infringement may be brought in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business.

### A. Plaintiff's Choice of Forum.

It cannot be said that the Southern District of Ohio has no connection to the matter in controversy. This is a patent infringement action. The patent holder resides in Ohio, and the patents were designed in Ohio. The amount of weight accorded to Plaintiff's choice of forum is diminished somewhat because the alleged infringement occurred in California. But this suit was filed when Hoist's product was still in development. Once it begins manufacture of the product, it will be marketed in Ohio as well as other states. However, the matter in controversy occurred in both California and Ohio; since Plaintiff's choice of forum is accorded greater weight when the chosen forum has ties to the litigation, Hoist has not shown that this factor weighs in favor of transfer.

Nonetheless, Hoist argues that "in patent infringement cases, 'the preferred forum is that which is the center of gravity of the accused activity.'" *The Laitram Corp. v. Morehouse Indus., Inc.,* 1994 WL 97819 (E.D. La. Mar. 21, 1994). To find the preferred forum or "'center of gravity,' a district court 'ought to be as close as possible to the milieu of the infringing device and the hub of activity centered around its production.'" *Id.* (quoting *Ricoh Co. v. Honeywell, Inc.*, 817 F. Supp. 473, 481 n. 17 (D.N.J. 1993)). Therefore, Hoist maintains, that in cases of patent infringement, a district court may disregard the plaintiff's choice of forum. *Id.*

While the alleged infringing conduct occurred in California, the patents in question as well as the patent holder are located in the Southern District of Ohio. Furthermore, the cases cited by Hoist are not controlling; they are from other circuits: one is a non-published opinion, and the other is a footnote in a case. Moreover, the

8

language cited is permissive; it states that the court "may" disregard the plaintiff's choice of forum.

In this case, while the acts of infringement may have occurred outside of the Southern District of Ohio, this case still has strong connections to the Ohio forum. All of Plaintiff's evidence and witnesses reside within this forum and it is the location of the patents' holder. Further, Hoist will market the allegedly infringing product to residents of Ohio. Having considered the basis for disregarding Plaintiff's choice of forum, I conclude that the evidence does not weigh so heavily in favor of disregarding Max Rack's choice of forum.

### B. Convenience of the Parties.

Ohio is a more convenient forum for Plaintiff, whereas California is a more convenient forum for Defendant. This factor does not weigh in favor of either party.

### C. Convenience of the Witnesses.

"Convenience of witnesses is perhaps the most important factor in the transfer analysis." *Steelcase*, 336 F. Supp. 2d at 720. Max Rack has identified witnesses who will testify regarding the patents and the respective exercise equipment. Specifically, Max Rack has identified the three patent designers, all of whom reside in the Southern District of Ohio.

On the other hand, Hoist maintains that all of its witnesses are located in California. Hoist is a California company, and the exercise equipment that it has designed and intends to manufacture are located in California. Further, Hoist maintains that it will call four witnesses from China who will testify about its manufacturing

process.

There is little reason to believe that flying witnesses from China to Ohio is substantially more burdensome than flying witnesses from China to California- both are burdensome. However, as Max Rack argues, the manufacturing process is not in dispute. The dispute is whether the equipment violates Max Rack's patents. Accordingly, the testimony of witnesses who are located in China may well be unnecessary.

Both parties have the ability to make use of deposition testimony and testimony via video conferencing. If the parties determine that live testimony is preferable, then any convenience to one set of witnesses is counterbalanced by any burden imposed on the other party. This factor does not weigh in either party's favor.

### D. Location of Access to Sources of Proof.

Max Rack argues that any documentary evidence relating to the patents are located in the Southern District of Ohio. As further evidence and in support of this proposition is the fact that Max Rack's principal place of business is located in the Southern District of Ohio. However, this same factor is counterbalanced by the fact that the equipment that allegedly violates the patents is located in the Southern District of California. The prototypes of the equipment were also sold in California. However, Defendants "have not shown that there is a disproportionately larger number of documents located closer" to the Southern District of California as opposed to the Southern District of Ohio. *See Steelcase,* 336 F. Supp. 2d at 722.

**E. Availability of Process for Unwilling Witnesses.**

Neither party has identified any witnesses who would be unwilling to testify in this matter regardless of where the action is pending. See *Steelcase*, 336 F. Supp. 2d at 722. Further, with the exception of the witnesses located in China, the witnesses identified by both parties are employees. Therefore, the parties as employers could compel their employees to testify.

**F. Cost of Obtaining Willing Witnesses.**

To lessen the cost of having the witnesses testify, each party has the ability to use deposition testimony and video conferencing. Further, any benefit offered to one party is counterbalanced by the burden imposed on the other party. While Hoist argues that it has the greater burden because it will be producing witnesses from China, as already stated, the testimony of these witnesses may not even be necessary. This factor also fails to weigh in favor of either party.

**G. Interests of Justice.**

Hoist argues that the interests of justice favor transfer because Hoist has asserted counterclaims under California law and because the Southern District of Ohio is more congested than the Southern District of California.

Hoist's counterclaims include unfair competition under the California Unfair Practices Act, California Business & Professions Code § 17200, *et seq*. and antitrust violations under the Cartwright Act, California Business & Professions Code § 16720, *et seq*. While a California district court has more experience applying California law, this factor does not weigh so heavily in Hoist's favor as to warrant transfer. Rather, federal

11

courts have experience applying federal law and the law of the state that controls the action. Hoist has not shown or argued how or why the California court would be better able to apply California law as opposed to an Ohio federal court. This argument is entitled to very little weight. *See Nemmers v. Truesdale,* 612 F.Supp. 245, 246 (N.D. Ohio,1985) (stating "[w]hile a district court in the Central District of Florida will have more experience applying Florida law, if that is the law which governs, [an Ohio court] does not regard this experience to be sufficiently significant to merit transfer."). *Cf. Jamhour v. Scottsdale Ins. Co.*, 211 F. Supp. 2d 941, 948 (S.D. Ohio 2002) (stating that generally in diversity cases the court most familiar with the controlling law should be the chosen forum.). Furthermore, the California state law claims are not asserted in Max Rack's complaint but arise because Hoist has pleaded them as counterclaims.

Hoist also argues that the differences in court congestion weigh in favor of transfer to California. A court may properly take into consideration the caseloads of both the potential transferor and proposed transferee court in determining whether the action should be transferred. *Neff Athletic Lettering Co. v. Walters*, 524 F. Supp. 268, 274 (S.D.Ohio 1981). The statistics submitted by Hoist state that there are a greater number of filings per judge in the Southern District of California; however, Ohio has a greater number of pending cases, including those pending for over three years. The average time from filing to trial in the Southern District of California is 6.9 months. On the other hand, in the Southern District of Ohio, the average time from filing until trial is 12.1 months.

While the average time for trial in the Southern District of California is approximately five months faster than the Southern District Ohio, this difference is not

12

so significant as to justify transferring this action.

### H.  Public Interest Factors.

Neither party has advanced any arguments contending that any public factors weigh in favor of one forum over another.  It should also be noted that Ohio has an interest in protecting its citizens, in this case Max Rack.  *See Jamhour,* 211 F. Supp. 2d at 948.

**IV. Conclusion.**

After considering the public and private interests factors, Hoist has failed to meet its burden of showing that the factors "weigh strongly in favor of transfer." *Steelcase,* 336 F. Supp. 2d at 719. Consequently, I **RECOMMEND** that Defendant Hoist Fitness Systems, Inc.'s September 26, 2005 motion to change venue to the Southern District of California pursuant to 28 U.S.C. § 1404(a) (doc. 6) be **DENIED**.

If any party objects to this Report and Recommendation, that party may, within ten (10) days, file and serve on all parties a motion for reconsideration by the Court, specifically designating this Report and Recommendation, and the part thereof in question, as well as the basis for objection thereto. *See* 28 U.S.C. §636(b)(1)(B); Fed. R. Civ. P. 72(b).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District Judge and waiver of the right to appeal the judgment of the District Court. *See Thomas v. Arn*, 474 U.S. 140, 150-152 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *See also Small v. Secretary of Health and Human Services*, 892 F.2d 15, 16 (2d Cir. 1989).

/s/ Mark R. Abel
United States Magistrate Judge