IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| MAX RACK, INC., | : | |
| Plaintiff, | : | Case No. 2:05-cv-784 |
| v. | : | Judge Smith |
| HOIST FITNESS SYSTEMS, INC., | : | Magistrate Judge Abel |
| Defendant. | : | |

**ORDER**

This matter is before the Court on defendant Hoist Fitness Systems, Inc.'s ("Hoist") December 29, 2005 motion for reconsideration of report and recommendation for denial of Hoist Fitness Systems' Section 1404 [sic] motion to transfer venue (doc. 23). On August 19, 2005, Max Rack, Inc. filed this patent infringement action against Hoist in the Southern District of Ohio asking this Court to issue an injunction to stop Hoist from infringing two of its patents. Five days later, in the Southern District of California, Hoist filed suit against Max Rack seeking a declaration of non-infringement for the same patents at issue in this litigation.[1]

**I. Background.**

The following factual account comes from the Magistrate Judge's report and

[1] Hoist makes a number of other claims in the California action including the following: (1) federal unfair competition; (2) state law unfair competition under California Business & Professions Code § 17200, *et seq*.; (3) federal antitrust violations under 15 U.S.C. § 2; (4) state antitrust violations under California Business & Professions Code § 16720, *et seq*.; and (5) patent misuse.

recommendation. The subject matter of these two related proceedings are two exercise equipment patents held by Max Rack: United States Patents No. 5,215,510 ("'510") entitled Dual-Guided Exercise Apparatus and United States Patent No. 5,669,859 ("'859") entitled Weightlifting Apparatus.

Defendant Hoist designs and manufactures exercise equipment. Compl. ¶ 10. Hoist designed a piece of equipment entitled the Free Lift Out Machine. It is supposed to simulate the feel of a free weight bench press, allowing the user to rack the weight at the conclusion of the lift at the height he or she selects. (Jeffrey Patrick Sept. 2005 Aff., ¶ 4). The Machine is currently in pre-sales phases and has not been sold to the general public or retailers. *Id.* at ¶¶ 4 and 11. However, four prototypes were sold to four different residents of California.[2] *Id.* at ¶ 12. Hoist maintains that the purchasers are non-employee testers, who are supposed to provide feedback on the design of the equipment and may be potential witnesses in this action. Max Rack's complaint alleges that the Free Lift Out Machine "is infringing and contributing to the infringement and/or inducing the infringement of one or more claims of the MAX RACK patents by making, selling, using and/or offering to sell said exercise equipment." Compl. ¶ 12.

**II. Parties' Arguments.**

Hoist argues that the Magistrate Judge denied transfer on the basis of erroneous assumptions. First, Hoist does not intend to manufacture the Free Lift design rack that

---

[2] Hoist identifies the prototype purchasers as Bree Walker, Del Mar, California, Jim Preston, Leucadia, California, Earl Eastman, Rancho Santa Fe, California, and Xavier Nady, San Diego, California. However, in its objections to the Magistrate Judge's report and recommendation, Hoist maintains that the design alleged to violate Max Rack's patents was abandoned early in the design phase and has not been sold to anyone nor has it been planned for marketing.

Max Rack has sued on. Hoist states that it has changed its design, and this new design is the specific equipment design that it intends to manufacture. Second, Hoist does not have any marketing plans at this time, and it was speculative for the Magistrate Judge to consider whether Hoist would market the design in Ohio in the future. Rather, this case is about the design, and the design alone–not an end user product. Further, while Hoist has marketed and sold other product designs in Ohio, it does not have any plans to market or sell the design that allegedly infringes Max Rack's patents because it has abandoned the design.

Hoist argues that the Magistrate Judge did not adequately consider all of the convenience factors. Hoist states that after considering the cost of transporting witnesses across the country for trial, the inconvenience of having attorneys travel from California to Ohio, and the conclusion that the witnesses from China may not be needed "makes apparent a failure to adequately consider the nature, extent, location and relevance of the evidence for this case." The great majority of witnesses are located in Southern California as well as the allegedly infringing device and supporting documentation. Therefore, the convenience factors weigh in favor of transfer.

Max Rack responds by arguing that Hoist has failed to mention the weight given to a plaintiff's choice of forum. Further, the convenience of the witnesses is probably the most important factor considered in a transfer analysis, and Hoist seems to disregard this factor by arguing that the forum where the infringer is located is the proper forum for hearing the matter.

Max Rack further argues that this suit is not limited to an early Hoist design that Hoist has now discarded. It is Max Rack's position that Hoist's new exercise equipment

is infringing the ‘510 and/or ‘850 patent. Therefore, Max Rack believes that various iterations of the equipment will be subject to the present action and not just the early design that Hoist refers to.

Max Rack also maintains that Hoist’s witness list is not credible because it lists 25 people who will testify about the design. Max Rack maintains that this is an attempt to sway the Court on the convenience factor by naming as many witnesses as possible.

Hoist has not identified any disproportionately large number of documents that it must produce in comparison to Max Rack. Further, when considering Hoist’s counterclaims for patent invalidity, Max Rack may be required to produce a far greater number of documents. Even if it is necessary for Hoist to produce a greater number of documents, this factor is entitled to very little weight because documents can be easily copied and shipped to wherever they are needed. Further, any difficulties associated with viewing the Free Lift Rack Out Machine can be alleviated through the use of drawings and video evidence.

In Hoist’s reply motion, it argues that in patent infringement cases, the plaintiff’s choice of forum can be disregarded and is entitled to very little weight. For support, Hoist cites *Laitrum Corp. v. Morehouse Indus., Inc*. 1994 WL 97819 (E.D. La. Mar. 21 1994). Accordingly, Hoist argues that this action must be transferred to the United States District Court for the Southern District of California.

**III. Discussion.**

Even if a suit is brought in a proper venue, it may be transferred to another venue:

For the convenience of parties and witnesses, in the interest of justice, a

> district court may transfer any civil action to any other district or division where it might have been brought.

28 U.S.C. § 1404(a). The decision whether to transfer a civil action is in the sound discretion of the trial court. *Midwest Motor Supply Co. v. Kimball,* 761 F. Supp. 1316, 1318 (S.D. Ohio 1991). It is the burden of the moving party to prove "why a change of venue should be granted." *Id.* "This burden is a heavy one and requires the moving party to show that the balance of factors weighs strongly in favor of transfer." *Steelcase Inc. v. Smart Technologies Inc*., 336 F. Supp. 2d 714, 719 (W.D. Mich. 2004).

Before transferring a case, the court must decide whether the proposed transferee court is one where the action might have been brought. *SKY Tech. Partners, LLC v. Midwest Research Inst.*, 125 F. Supp 2d 286, 291 (S.D. Ohio 2000). "An action 'might have been brought' in a transferee court if: (1) the court has jurisdiction over the subject matter of the action; (2) venue is proper there; and (3) the defendant is amendable to process issuing out of the transferee court." *Id.* (punctuation omitted).

Once the trial court has determined that there is more than one proper forum, the court may undertake a balancing of factors to determine if transfer is appropriate under § 1404. The trial court should consider both the public and private interests involved. *Gulf Oil v. Gilbert*, 330 U.S. 501, 508-09 (1947). The private interest factors include: the plaintiff's choice of forum;

> the relative ease of access to the sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing witnesses; possibility of view of the premises; if view would be appropriate to the action; and all other practical problems that make trial of the case easy, expeditious, and inexpensive.

*Id.* at 508. The public interest factors include: "docket congestion; the burden of trial to

a jurisdiction with no relation to the cause of action; the value of holding trial in a community where the public affected live; and the familiarity of the court with controlling law." *Id.* This Court has also identified additional factors: "the nature of the suit, the place of the events involved, and the residences of the parties." *SKY Tech. Partners,* 125 F. Supp 2d at 291.

While transfer under § 1404 is similar to the analysis undertaken by a court when deciding *forum non conveniens* transfers, § 1404 is different in that it requires a "lesser showing of inconvenience." *SKY Tech. Partners,* 125 F. Supp 2d at 291 (citation omitted). The parties agree that this action could have been filed in the Southern District of California and that the California court has subject-matter jurisdiction over this matter.[3] Next, the private and public interest factors will be applied to the facts of this case. Because of the lengthy analysis performed by the Magistrate Judge, only those specific arguments raised in the parties' objections to the Magistrate Judge's report and recommendation will be addressed.

**A. Plaintiff's Choice of Forum.**

As a general rule the plaintiff's choice of forum is given "substantial consideration

---

[3] See 28 U.S.C. § 1400(b) which states

> (b) Any civil action for patent infringement may be brought in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business.

in balancing the § 1404 factors." *Steelcase*, 336 F. Supp. 2d at 720. "This is especially true [when] the plaintiff also resides in the chosen forum." *Id.* However, when the chosen forum has no connection with the controversy, the plaintiff's choice is given "significantly less weight." *Id.* Thus, plaintiff's chosen forum is given less weight if the chosen forum is not plaintiff's home forum. *LG Electronics Inc. v. First Int'l Computer, Inc.,* 138 F. Supp. 2d 574, 589 (D.N.J. 2001). Further, some courts have recognized an exception to this rule for patent infringement cases: "in patent infringement cases 'the preferred forum is that which is the center of gravity of the accused activity. In finding that 'center of gravity,' a district court 'ought to be as close as possible to the hub of activity centered around its production.'" *Laitram Corp.*, 1994 WL 97819 * 4 (quoting *Ricoh Co. v. Honeywell, Inc.*, 817 F.Supp. 473, 481 n. 17 (D.N.J. 1993)). "For that reason, district courts may disregard plaintiff's choice of forum in cases involving patent infringement." *Id.*

In *Laitrum,* a patent infringement lawsuit was filed in the patent holder's home state of Louisiana. The alleged infringer resided in California and sought transfer to a California district court. The Louisiana court found the following factors weighed in favor of transfer: all of the alleged infringing products were designed, developed, and manufactured in California, all of alleged infringing products were shipped from California, all the documents and records regarding the "design, development, manufacturing, marketing, and sales" were in California, and the only witnesses that would testify at the trial resided in California. *Id.* Accordingly, the "center of gravity" in this patent infringement case, rested in the California forum.

In *Tuna Processors, Inc. v. Hawaii Int'l Seafood, Inc*., 408 F. Supp. 2d 358 (E.D.

Mich. 2005), the court held that transferring a patent infringement action from Michigan to Hawaii was appropriate. The court found that all of the defendant's key witnesses were located there, that the plaintiff patent holder did not intend to call any witnesses from Michigan; rather, all of the plaintiff's witnesses were located in California and Asia, all the documents relating to the alleged infringement were in Hawaii, and the only defense witnesses located in Michigan were a few of the alleged infringer's sales personnel from a Michigan office. *Id*. at 360-62.

In *Sandvik v. Rockmore Int'l, Inc.*, 2005 WL 3159282 * 4 (M.D. Pa. Nov. 28, 2005) (slip copy), the court undertook a patent infringement "center of gravity" analysis. The court stated that the "appropriate considerations [under this analysis] include the location of a product's development, testing, research, production, and the place where the marketing and sales decisions were made, rather than where limited sales activity has occurred." *Id.* (citing *Saint-Gobain Calmer v. Nat'l Products Corp*., 230 F. Supp. 2d 655, 660 (E.D. Pa. 2002)). *See also Osteotech v. Gensci Regeneration Sciences, Inc.*, 6 F. Supp. 2d 349, 357-58 (D.N.J. 1998) (also stating that the place where marketing and sales decisions are made is more important than where limited sales of the allegedly infringing product have occurred.) .

In *Lucent Technologies v. Aspect Telecommunications*, 1997 WL 476356 (E.D. Pa. Aug. 20, 1997), the court distinguished the facts in the patent infringement case before it and other cases using the "center of gravity" analysis. The court criticized the test because

> it gives no weight to the plaintiff's activities in inventing and licensing the patent. Rather, the test gives inordinate weight to the 'accused activities' by focusing solely on the geographical area where the defendant designed

and developed the allegedly infringing product.

*Id.* at 2. The court next stated that "Congress never intended the center of gravity test to be the predominate factor in determining venue in patent infringement suits." *Id.* Rather, the tests should be one factor, among many, considered in the transfer analysis. *Id.* at 3. The center of activity should be "given substantial weight only where the plaintiff has engaged in forum shopping" or when the parties have "virtually no contact with the plaintiff's chosen forum." *Id.* The court concluded that

> The center of gravity test cannot be the predominant factor to consider in determining the forum in patent infringement cases because the defendant would almost always be allowed to transfer the case to its home forum thereby turning on its head the traditional notion expressed in *Jumara [v. State Farm Ins. Co.*], 55 F.3d [873,] 879 [(3d Cir. 1995)], that the plaintiff's choice of forum should not be lightly disturbed.

*Id.*

In *Optima, Inc. v. Republic Indus., Inc.*, 1995 WL 72430 * 3 (E.D. La. Feb. 21, 1995), the court distinguished other patent infringement cases where the courts had used the "center of gravity" test to transfer to another venue. The test "generally applie[s] in cases in which the plaintiff does not bring suit in its home forum." *Id.* The court held that transferring the case out of the plaintiff's home state was not warranted because "[t]he defendant failed to demonstrate that the plaintiff's choice of forum was due solely to forum shopping." *Id.* at 4 (reasoning that the plaintiff's residence in the chosen forum created a "connection between the district and the cause of action generally not found in the center of gravity cases.").

As repeatedly stated, the decision to transfer to another forum is within the sound discretion of this Court. *Midwest Motor Supply Co.*, 761 F. Supp. at 1318. In this case,

Hoist argues that this action should be transferred because the infringing acts occurred in California. Yet, this case is distinguishable from the other cases holding that patent infringement actions should be heard where the "hub of activity" of the infringing conduct occurred. Hoist has repeatedly stated in its objections, that the design at issue, was abandoned by Hoist prior to being manufactured and prior to any marketing or sales. (Jeffrey Patrick's Sept. 2005 Aff., ¶ 11). Therefore, the ties to California are substantially less than what was found in the other "center of gravity" cases. Assuming that Hoist contentions are accurate, that the subject design was never manufactured or sold, this case does not present the same strong showing of a connection between the infringing conduct and the proposed forum as was present in the other patent infringement cases where transfer pursuant to the "center of gravity" test was appropriate. There were no marketing decisions or manufacturing decisions made in this case. The only activity, according to Hoist, was its decision to abandon the allegedly infringing design after manufacturing four prototypes.

Max Rack is located in Columbus, Ohio. This Court is its home forum. This Court agrees with the reasoning in *Sandvik,* in which the court expressed concern with transferring a patent infringement case even when filed in the patent holder's home state because it gives no weight to the patent holder's activities and gives too much weight to the infringing conduct. *Sandvik,* 1997 WL 476356 * 4.

Finally, Hoist has not suggested and there is no reason to believe that Max Rack is engaged in forum shopping when it chose to file this action here. The Southern District of Ohio is the most convenient forum for Max Rack because it is Max Rack's home forum. Plaintiff's choice of forum is entitled to deference. This factor does not

weigh in favor of transfer.

**B. Location of the Witnesses and Evidence.**

Hoist has identified 17 California residents who may potentially be witnesses in this action as well as 4 potential witnesses currently residing in China. (Jeffrey Patrick Sept. 2005 Aff., ¶¶ 18 & 19). Max Rack has not submitted an affidavit or otherwise identifying who its witnesses may be. This factor does weigh in Hoist's favor. However, Hoist has taken the inconsistent positions that it abandoned the subject design prior to manufacturing the machine. Therefore, there is no reason to believe that witnesses from China, who are willing to testify about the manufacturing, are necessary. Further, as the design has never been manufactured or sold, it is likely that the number of witnesses needed to testify are less than would be needed if the design had been manufactured and sold. Moreover, Hoist has not provided any reason why video, deposition, or teleconferencing testimony is inadequate.

While Max Rack has failed to identify its witnesses by affidavit, it is assumed that it will be necessary for Max Rack to call witnesses from Ohio. For example, the named inventors of Max Rack's patents, Mariah T. Liggett, Steven Skilken, and Peirce L. Miller, are located in the Southern District of Ohio. Accordingly, any inconvenience imposed on Hoist by having to transport its witnesses to Ohio, is counterbalanced by the inconvenience imposed on Max Rack if transfer were granted. *See Imperial Products, Inc. v. Endura Products, Inc*., 109 F. Supp 2d 809, 818 (S.D. Ohio 2000) (discussing transfer under § 1404(a) and that this provision is not meant to merely shift the burden and inconvenience from one party to the other). While the evidence presented supports Hoist's contention that transfer would be more convenient to its witnesses, this

factor does not weigh so heavily in favor of Hoist as to warrant transfer.

An analysis with regard to documentary evidence is similar. Both parties will be required to provide documentary evidence regarding the patented designs. Any burden imposed on Hoist is counter-balanced by the potential burden that would be imposed on Max Rack if transferred. Further, as the Magistrate Judge noted, the location of the documentary evidence is of little weight in deciding a motion to transfer because documents may be easily copied and transferred. *See Id.* Moreover, Hoist does not maintain that copying and shipping the documentary evidence in this case is so voluminous as to be unduly burdensome or expensive.

**C. Court Congestion.**

Hoist argues that the Magistrate Judge did not appropriately weight the the differences in court congestion in deciding the motion to transfer venue. A court may properly take into consideration the caseloads of both the potential transferor and proposed transferee court in determining whether the action should be transferred. *Neff Athletic Lettering Co. v. Walters*, 524 F. Supp. 268, 274 (S.D.Ohio 1981). The statistics submitted by Hoist state that there are a greater number of filings per judge in the Southern District of California; however, Ohio has a greater number of pending cases, including those pending for over three years. The average time from filing to trial in the Southern District of California is 6.9 months. On the other hand, in the Southern District of Ohio, the average time from filing until trial is 12.1 months.

While the average time for trial in the Southern District of California is approximately five months faster than the Southern District Ohio, this difference is not so significant as to justify transferring this action. This Court is not persuaded that Hoist

has not met its "substantial burden" in showing that transfer is warranted under § 1404(a).

**IV. Conclusion.**

Upon *de novo* review in accordance 28 U.S.C. §636(b)(1)(B); Fed. R. Civ. P. 72(b), the Magistrate Judge's December 15, 2005 Report and Recommendation is **AFFIRMED** and **ADOPTED** (doc. 22). Defendant's December 29, 2005 motion for reconsideration of report and recommendation for denial of Hoist Fitness Systems' Section 1404 [sic] motion to transfer venue (doc. 23) is **OVERRULED**. Defendant's September 26, 2006 motion to change venue (doc. 6) is **DENIED**.

/S/ George C. Smith
George C. Smith, Judge
United States District Court